# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:13-cv-38-MR
### [CRIMINAL CASE NO. 1:09-cr-23-MR-10]

| | | |
|---|---|---|
| PERRY ROGER SHIPPY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, [Doc. 1]; Petitioner's First Supplement to his 2255 Motion, [Doc. 2]; Petitioner's Second Supplement to his 2255 Motion, [Doc. 3]; Petitioner's First Supplement to his 2255 Memorandum,[1] [Doc. 4]; and Petitioner's Second Supplement to his 2255 Memorandum, [Doc. 5].

## BACKGROUND

On April 7, 2009, the Petitioner was named in a Bill of Indictment along with nine other persons and charged with a drug conspiracy in one count and

_____

[1] Petitioner incorporated his initial Memorandum in his original 2255 Motion. [Doc. 1 at 7-21].

using a communications facility to commit the drug conspiracy in a second count. [Criminal Case No. 1:09-cr-23-MR ("CR") Doc. 1]. As to the charged conspiracy, the Indictment alleged that it involved 50 or more grams of cocaine base and more than 5 kilograms of cocaine hydrochloride thus subjecting Petitioner to imprisonment within a statutory range of not less than 10 years or more than life in accordance with (then applicable) 21 U.S.C. § 841(b)(1)(A). [Id.]. Further, the Indictment alleged that the ten named defendants also conspired with Kenneth Lee Foster and Dennis Lamar Bruton to possess with the intent to distribute crack cocaine. These latter two persons were indicted in a separate case in this District under file number 1:09-cr-13. [Id.].

Following Petitioner's arrest, he made his initial appearance before Magistrate Judge Dennis Howell on April 9, 2009. [CR Docket Sheet]. The Magistrate Judge found Petitioner to be indigent and appointed counsel. [CR Doc. 25]. During the week of May 4, 2009, Petitioner filed pro se motions to: compel discovery [CR Doc. 97], appeal his order of detention [CR Doc. 98], suppress evidence [CR Doc. 102], and dismiss the Indictment [CR Doc. 103]. The Court denied these motions without prejudice as the Petitioner was represented by counsel. [CR Doc. 115]. On May 18, 2009, Petitioner filed a pro se motion to sever his case from his codefendants. [CR Doc. 129].

Like before, the Court denied this motion without prejudice as the Petitioner was represented by counsel. [CR Doc. 132].

On May 11, 2009, the Government filed a 21 U.S.C. § 851 Information notifying Petitioner that he faced enhanced punishment due to his 1993 North Carolina felony drug conviction. [CR Doc. 112]. The Government then moved to join for trial the case involving Petitioner with cases filed under numbers 1:09-cr-13 and 1:09-cr-16 in this District. [CR Doc. 148]. The Court granted the Government's motion for joinder. [CR Doc. 168].

Petitioner's case came on for jury trial July 6, 2009. The jury returned guilty verdicts against Petitioner on both counts. [CR Doc. 173]. Further, the jury attributed "less than 50 grams of cocaine base" to Petitioner based upon his role in the drug conspiracy. [Id.].

Prior to the Petitioner's sentencing, a United States probation officer prepared a Presentence Report. [CR Doc. 186]. Based upon the jury's drug finding and the evidence adduced at trial, and without objection by the Petitioner, the probation officer determined that Petitioner was responsible for between 5 and 20 grams of cocaine base, which yielded a Base Offense Level of 24 under the Guidelines. [Id. at 6]. There being no enhancements or deductions, 24 was his Total Offense Level as well. With regard to Petitioner's past record, the probation officer determined Petitioner had

accumulated twelve criminal history points based on prior convictions placing him in Criminal History Category V.  [Id. at 14].  Taking Petitioner's Total Offense Level of 24 together with his Criminal History Category of V, the Guidelines' sentencing table indicated a Guidelines range of imprisonment between 92 and 115 months. However, due to the Government's § 851 Information, in conjunction with the jury's drug finding of less than 50 grams of cocaine base attributable to Petitioner, the then-applicable version of 21 U.S.C. § 841(b)(1)(B) required a term of imprisonment of not less than 120 months for Petitioner's conviction on Count One.  [Id. at 20].  Therefore, the Petitioner's Guidelines range for that offense became 120 months pursuant to U.S.S.G. § 5G1.1.

The Court conducted the Petitioner's sentencing hearing on August 25, 2009.  [CR Doc. 225].  At the hearing, the Court adopted the facts contained in the PSR and determined that the Petitioner's applicable Guidelines range was 120 months.  [CR Doc. 194].   After considering the 18 U.S.C. § 3553(a) factors and hearing from the parties, the Court sentenced Petitioner to a 120-month term of imprisonment on Count One, a 96-month term of imprisonment on Count Two to run concurrently with the sentenced imposed for Count One, as well as concurrent eight and three year terms of

Supervised Release, respectively, on Counts One and Two, and a $200.00 Special Assessment. [CR Doc. 193].

The Court entered its Judgment on August 27, 2009. [Id.]. Petitioner filed his notice of appeal the following day. [CR Doc. 195]. The United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction and sentence in an unpublished opinion filed on April 24, 2012. [CR Doc. 330].

On February 11, 2013, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255. [Doc. 1]. In his motion, and his subsequent four supplements, the Petitioner's pro se filings contain many redundant arguments. Notably, some of the issues he has raised in this action were resolved in the appeal of his criminal case. The Court will list the Petitioner's claims in the order they were filed.

**A.     Original 2255 Motion. [Doc. 1].**

In his original Motion, Petitioner attacks his conviction and sentence on four grounds.

1.     Under "Ground one," Petitioner asserts his pro se pretrial motions were unlawfully denied. [Doc. 1 at 4].

2.     Under "Ground two," Petitioner alleges insufficient evidence existed to support the jury's verdict finding Petitioner guilty of the drug conspiracy. [Id.].

3. Under "Ground three," Petitioner alleges insufficient evidence existed to support the jury's verdict finding Petitioner guilty of using a communications facility to commit the drug offense. [Id.].

4. Under "Ground four," Petitioner alleges his sentence should be reduced based upon the provisions of the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (effective Aug. 3, 2010, herein "FSA") (reducing drug quantity thresholds necessary to trigger mandatory minimum sentences). [Id. at 5].

**B.     Original Memorandum Accompanying 2255 Motion. [Doc. 1].**

Attached to Petitioner's 2255 Motion was a "Memorandum of Law" wherein Petitioner argues issues entirely different from those set out in his 2255 Motion. The Court will thus treat this original Memorandum as simply a continuation of Petitioner's 2255 Motion. Petitioner's original Memorandum contains five arguments.

1. Petitioner begins his Memorandum contending that his base offense level under the Guidelines should have been calculated using a crack-to-powder cocaine ratio of 1:1 not 100:1. [Id. at 7-9, 11-13].

2. Petitioner next asserts that his 1993 felony drug conviction from North Carolina, the predicate offense listed by the Government in

its § 851 Information, is invalid and thus inappropriate for use as an enhancement. He contends such conviction is simply too old, and further, that it was brought about by means of a coerced plea. [Id. at 9].

3.      Petitioner claims the Court failed to consider the 18 U.S.C. § 3553(a) factors before imposing sentence upon him. [Id. at 9-10, 11-13].

4.      Petitioner follows with a claim asserting the ineffectiveness of this trial counsel for not contesting the Government's evidence introduced at trial connecting him to a cell phone monitored by law enforcement. [Id. at 10-11].

5.      Finally, Petitioner ends his Memorandum with the assertion that certain convictions listed in his Presentence Report were erroneously assigned criminal history points for Guidelines calculation purposes. [Id. at 13-14].

**C.      First Supplement to 2255 Motion. [Doc. 2].**

In his First Motion Supplement, Petitioner asserts two ineffective assistance of counsel claims.

1.     Petitioner contends his trial counsel was ineffective for failing to seek the severance of his matter from his nine codefendants' matters in case number 1:09-cr-23.  [Doc. 2 at 1].

2.     In a related vein, Petitioner asserts his trial counsel was ineffective for failing to object to the Government's motion to join for trial Petitioner's criminal case file number 1:09-cr-23 with the criminal cases filed under numbers 1:09-cr-13 and 1:09-cr-16.  [Id. at 1-2].

**D.     Second Supplement to 2255 Motion. [Doc. 3].**

In his Second Motion Supplement, Petitioner reiterates that his Base Offense Level for sentencing under the Guidelines should have been calculated using a crack-to-powder cocaine ratio less than 100:1 or in conformity with the Fair Sentencing Act. [Doc. 3 at 1].

**E.     First Supplement to 2255 Memorandum. [Doc. 4].**

In his First Memorandum Supplement, Petitioner submits the Supreme Court's decisions in Peugh v. United States, 133 S. Ct. 2072 (2013) and Alleyne v. United States, 133 S. Ct. 2151 (2013), as additional authority for his argument that his mandatory minimum sentence is constitutionally infirm. [Doc. 4 at 1-2].

**F. Second Supplement to 2255 Memorandum. [Doc. 5].**

In his Second Memorandum Supplement, Petitioner reiterates that the Supreme Court's decisions in <u>Peugh</u> and <u>Alleyne</u> require that he be resentenced without the application of any statutory mandatory minimum. [Doc. 5 at 1]. Further, Petitioner submits the Supreme Court's decision in <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013), as additional authority in support of this argument. [<u>Id.</u> at 2].

## STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion is not dismissed after this initial review, the Court must direct the Government to respond. <u>Id.</u> The Court must review the Government's answer, if any, in order to determine whether an evidentiary hearing is warranted under Rule 8(a). Having considered the record in this matter, the Court finds it is clear that Petitioner is not entitled to relief; therefore, an evidentiary hearing is not required. <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

**DISCUSSION**

As noted above, some of Petitioner's claims set forth in his various filings were resolved by the Fourth Circuit in Petitioner's direct appeal. In particular, the second, third, and fourth "grounds" in Petitioner's original Motion were addressed by the Court of Appeals. With regard to the second and third grounds, the appellate court concluded sufficient evidence was presented to the jury to sustain Petitioner's convictions on each of the two counts. United States v. Shippy, No. 09-4802, slip op. at 16-28 (4th Cir. 2012) (unpublished). In a § 2255 proceeding, a petitioner will not be allowed to recast, under the guise of a collateral attack, questions fully considered on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding the law of the case doctrine forecloses relitigation of issues expressly or impliedly decided by the appellate court) (internal citation omitted).

Petitioner's argument contained in the fourth ground of his original Motion [Doc. 1 at 5], and his argument contained in the second half of his Second Supplement to 2255 Motion [Doc. 3 at 2-3], is that his sentence should be reduced pursuant to the FSA and that the FSA is retroactively applicable to him. For support, Petitioner cites to the Sixth Circuit's decision in United States v. Blewitt, 719 F.3d 482 (6th Cir. 2013), which recognized

the FSA as being fully retroactive. The Fourth Circuit in Petitioner's appeal, however, ruled that Petitioner's argument was foreclosed by circuit precedent, namely United States v. Bullard, 645 F.3d 237 (4th Cir.) cert. denied, 132 S. Ct. 356 (2011). Shippy, slip op. at 2 n.1. Bullard held[2] that the FSA is not retroactive and therefore inapplicable to persons who were convicted and sentenced prior to its passage. Bullard, 645 F.3d at 248 (noting that the FSA contains no express statement of retroactivity, nor can any such intent be inferred from its language). Like the defendant in Bullard, the Petitioner was convicted and sentenced before the FSA became effective. Further, aside from binding circuit precedent, the entire Sixth Circuit overruled the panel decision in Blewitt by its later *en banc* decision. United States v. Blewitt, 746 F.3d 647 (6th Cir. 2013) (*en banc*). Accordingly, Bullard controls here, the panel decision in Blewitt has been abrogated, and Petitioner's argument on this issue is without merit.

The last issue remaining in Petitioner's original Motion pertains to the Court's denial of his pro se filings while he was represented by counsel. [Doc. 1 at 4]. The Constitution does not confer a right to proceed

---

[2] In a footnote, the panel in Bullard stated that it was not addressing the issue of whether the FSA could be found to apply to defendants whose offenses were committed before August 3, 2010, but who were not sentenced until after that date. Bullard, 645 F.3d at 248 n.5. The Supreme Court, however, subsequently addressed that precise issue in Dorsey v. United States, 132 S. Ct. 2321, 2336 (2012), holding that the new FSA penalties were available to such "bridge-defendants." Petitioner, however, was not a "bridge-defendant."

simultaneously by counsel and pro se.  See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (finding no constitutional right to hybrid representation). See also, United States v. Penniegraft, 641 F.3d 566, 569 n.1 (4th Cir. 2011) (holding that where defendant is represented by counsel on appeal and his appeal is not submitted pursuant to Anders v. California, 386 U.S. 738 (1967), defendant may not submit pro se briefing). Thus, this Court was not obligated to consider Petitioner's pro se motions filed during his criminal proceeding in light of the fact that he was represented by counsel at that time.  Accordingly, Petitioner's argument on this issue is without merit.

The Court turns next to Petitioner's first argument contained in his original Memorandum where he contends that his Base Offense Level under the Guidelines should have been calculated using a crack-to-powder cocaine ratio of 1:1 not 100:1.  [Doc. 1 at 7-9]. Petitioner's argument contained in the first half of his Second Supplement to 2255 Motion [Doc. 3 at 1] reiterates this argument and expands upon it by asserting Congress' disproportionately punitive treatment of the distribution of crack cocaine is unconstitutional, denying Petitioner equal protection of the laws.  The Fourth Circuit's decision in Bullard not only resolved Petitioner's FSA argument: it controls on this issue as well.   The defendant in Bullard, like Petitioner here, argued that because the harsh crack penalties disproportionately impact African

Americans, the penalties violate equal protection and due process.  <u>Bullard</u>, 645 F.3d 245-46.  The defendant in <u>Bullard</u>, also like Petitioner here, failed to identify for the Fourth Circuit

> any subsequent controlling precedent compelling the conclusion that our prior decisions upholding the sentencing disparities have been overruled. We must therefore conclude that the disparities between crack and cocaine sentences contained in 21 U.S.C. § 841 do not violate equal protection or due process.

<u>Bullard</u>, 645 F.3d 246.   Petitioner's argument, therefore, is without merit.

It must be noted that Petitioner's argument concerning his Base Offense Level calculation is irrelevant.  Petitioner's Guidelines range was based on the statutory mandatory minimum.  Neither his Total Offense Level nor his Base Offense Level played any role in determining that range. Hence, even if his challenge to the Base Offense Level were of any merit, it would have no effect on his sentence and would form no basis on which to vacate that sentence.

The Petitioner's second argument contained in his original Memorandum challenges the validity of his 1993 North Carolina felony drug conviction.  Petitioner, however, has waived this argument by not following the statutory procedure put in place by Congress to contest a prior drug conviction.  Section 851 of Title 21 of the United States Code sets forth specific procedures allowing a defendant to challenge the validity of a prior

conviction used to enhance the sentence for a federal drug offense. Specifically, if a defendant "claims that any conviction alleged [in a § 851 information] is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney." 21 U.S.C. § 851(c)(1). Further, "[a] person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. ... Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge." 21 U.S.C. § 851(c)(2). Petitioner did not comply with either the particularity requirement or the filing deadline mandated by § 851(c)(2). Further, Petitioner has set forth nothing to show "good cause" to excuse these deficiencies. The Court, therefore, concludes that Petitioner waived this claim.

Petitioner's third argument contained in his original Memorandum is that the Court failed to consider the 18 U.S.C. § 3553(a) factors before imposing sentence upon him. [Doc.1 at 9-10]. The factual record belies Petitioner's contention. Contrary to the Petitioner's assertions, the Court *did* consider the factors set forth in 18 U.S.C. § 3553(a). [Doc. 225 at 7-9].

Having considered those factors at the Petitioner's sentencing hearing, the Court then imposed the most lenient sentence permissible, the statutory mandatory minimum of 120 months on Count One. The Court, therefore, overrules this claim.

Petitioner's fourth argument contained in his original Memorandum is that his trial counsel was ineffective for not contesting the Government's evidence introduced at trial connecting him to a cell phone monitored by law enforcement. [Doc. 1 at 10-11]. Petitioner also raises two other ineffectiveness claims in his First Motion Supplement. [Doc. 2]. There, Petitioner asserts his trial counsel was ineffective for allegedly failing to seek the severance of his matter from his nine codefendants' matters in case number 1:09-cr-23 [Id. at 1], and allegedly failing to object to the Government's motion to join for trial Petitioner's criminal case file number 1:09-cr-23 with the criminal cases filed under numbers 1:09-cr-13 and 1:09-cr-16. [Id. at 1-2].

For the Court to find ineffective assistance of counsel, Petitioner must demonstrate both that his counsel's performance fell below the standard of objective reasonableness and that the deficient performance was prejudicial to his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In evaluating the reasonableness of trial counsel's performance, the Fourth

Circuit recently provided the district courts in this circuit with some added guidance:

> It is important at the outset to emphasize the basic lesson of <u>Strickland v. Washington</u>: "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689, 104 S. Ct. 2052. It is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> Thus, an evaluation of attorney performance requires that "every effort be made to eliminate the distorting effects of hindsight." <u>Id.</u> Further, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> Attorneys need not raise every possible claim to meet the constitutional standard of effectiveness. They are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success. <u>See</u> <u>Evans v. Thompson</u>, 881 F.2d 117, 124 (4th Cir. 1989). In fact, there are "countless ways to provide effective assistance in any given case." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. 2052. "Even the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u>

<u>United States v. Mason</u>, 774 F.3d 824, 828 (4th Cir. 2014). Turning first to the use of the cell phone for which Petitioner was convicted under Count Two,[3] the conversations intercepted from this cell phone revealed drug sale

---

[3] This argument contained in Petitioner's original Memorandum is more appropriately characterized as another effort by Petitioner to challenge the sufficiency of the evidence admitted to support his conviction under Count Two rather than a claim that his counsel was ineffective for not contesting the evidence introduced at trial connecting him to the cell phone. "Alleging that this defendant was personally responsible for the use of a transmitting devise, which was never at any time, placed, found, taken from, believed to belong, nor in use of, and never checked to see if in any way been linked to the defendant. No wittnesses [sic] to acclaim this facility to the defendant." [Doc. 1 at 11]. Petitioner,

and distribution discussions.  <u>Shippy</u>, slip op. at 3-6.  Petitioner contends that:

> during his trial defendants Counsel (Charles Wyatt McKeller) searched the Web on his Lap Top Computer, he not only found the said telephone number but found it to be in use and owned by someone living in the West Asheville area. Defendant ask his Counsel to stop the trial. Counsel stated that we could'nt use this evidense in trial. That it was too late to enter into evidense.  So trial continued. There was never any voice analysis, nor spectometry presented for or against the defendant to check for a possible match in the voices. No Proof or Speculatory evidense against the defendant in the charge of 21 U.S.C.S. § 843(b).

[Doc. 1 at 11 (textual errors as appearing originally)].    Assuming the truthfulness of Petitioner's statements, there exist sound reasons for counsel to act as he did.  Petitioner denied any involvement in the charged conspiracy and, following the Government's case in chief, testified in his own defense. <u>Shippy</u>, slip op. at 4 n.3.  Petitioner's counsel may have foregone any voice analysis of the recorded cell phone calls to allow himself the opportunity to argue a reasonable doubt existed as to whether it was Petitioner's voice that had been recorded.    Further, given Petitioner's stance, had counsel subjected the recordings to voice analysis and such testing confirmed that it was Petitioner speaking, Petitioner's defense would have been destroyed. Likewise, trial counsel's refusal to offer evidence that the cell number was

_____

however, alleges certain deficiencies of trial counsel in this part of his Memorandum and the Court, therefore, will address them in light of the <u>Strickland</u> standard.

"owned by someone living in the West Asheville area" was a strategic call the Court cannot second guess.  Trial counsel may have learned that the cell number was registered to a family member or acquaintance of the Petitioner or otherwise linked to him in some detrimental way.  According to <u>Strickland</u>, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  Therefore, the Court accepts that presumption and overrules Petitioner's argument.

Turning now to Petitioner's two related ineffectiveness claims, Petitioner faults his trial attorney for failing to seek the severance of his case from his nine codefendants and for counsel's failure to oppose the Government's motion to join the cases involving Kenneth Lee Foster, Yvonne Marie Fountain, and others.  [Doc. 2 at 1-2].  There is an old adage that "there is safety in numbers."  Petitioner's counsel could reasonably have believed, as the Fourth Circuit concluded, "that the vast majority of the evidence [at trial] addressed the conduct of Foster and Fountain, whose conduct was inarguably the subject of greater and stronger direct evidence than that of Shippy."  <u>Shippy</u>, slip op. at 10.  Accordingly, with the bulk of the evidence admitted against his codefendants and only one Governmental witness testifying against Shippy, Petitioner's counsel may have adopted the

strategy the Petitioner would be "lost in the crowd," or at the very least that the evidence against Petitioner, when the jury compared that evidence to the evidence offered against Foster and Fountain, was simply insufficient to convict him.[4]  Had Petitioner prevailed upon his attorney as claimed and been the only person sitting at the defense table, all jurors would have been focused exclusively on him throughout the trial. Counsel apparently felt that this strategy was unsound. The Court, in reviewing the performance of Petitioner's counsel, has made every effort "to eliminate the distorting effects of hindsight."   Given that trial counsel "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success[,]" Mason, 774 F.3d at 828, the Court concludes that the performance of Petitioner's trial attorney did not fall below the standard of objective reasonableness.  The Court, therefore, overrules Petitioner's three ineffective assistance of counsel claims.

Petitioner ends his original Memorandum with the assertion that certain convictions listed in his Presentence Report were erroneously assigned criminal history points for Guidelines calculation purposes. [Doc. 1 at 13-14]. Petitioner's claim in this regard is not cognizable on habeas review.  United

---

[4] To some extent, it appears that counsel's strategy may have been successful in this regard because the jury held the Petitioner responsible for a lesser quantity of drugs than the amount with which he was originally charged in the indictment.

States v. Foote, --- F.3d ----, 2015 WL 1883538 (4th Cir. Apr. 27, 2015). For the Court to consider this claim, since the alleged sentencing error is neither constitutional nor jurisdictional, Petitioner must show that the error amounts to "a fundamental defect which inherently results in a complete miscarriage of justice." Foote, slip op. at 5 (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). This the Petitioner cannot do. Even assuming Petitioner was assigned an erroneous number of criminal history points under the Guidelines for the two identified convictions, such error did not affect his sentence at all, let alone render his sentence a "complete miscarriage of justice." Petitioner's sentence was based upon a minimum term set by statute and was not based upon a Guidelines determination arising from his criminal history calculation. Accordingly, Petitioner's argument on this issue is without merit.

Finally, the Court will address Petitioner's First and Second Memorandum Supplement wherein he submits the Supreme Court's decisions in Peugh v. United States, 133 S. Ct. 2072 (2013) and Alleyne v. United States, 133 S. Ct. 2151 (2013) [Doc. 4 at 1-2], and Descamps v. United States, 133 S. Ct. 2276 (2013) [Doc. 5 at 2], as additional authority for his argument that his mandatory minimum sentence is constitutionally infirm. None of these cases, however, assist Petitioner. Peugh addressed

whether there is an ex post facto violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense. Petitioner's sentence was controlled by a statutory requirement, not by any Guidelines calculation, and thus Peugh is inapposite. Descamps simply defines the circumstances under which a district court may apply the modified categorical approach when a defendant is convicted of a divisible offense, which is not an issue with regard to Petitioner's mandatory minimum sentence. Petitioner's final argument regarding Alleyne, however, requires more discussion.

In overruling Harris v. United States, 536 U.S. 545 (2002), Alleyne rejected any distinction, for Sixth Amendment purposes, between facts that increase a statutory maximum sentence and those that increase only a statutory minimum sentence. As the Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime and thus the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt. The question of whether the Petitioner had a prior conviction, which was used for purposes of enhancement under 21 U.S.C. § 851, was never submitted to a jury for

consideration.  This may appear on the surface to be a violation of <u>Apprendi</u>.

However, the principle established by <u>Apprendi</u>, and the <u>Apprendi</u> decision

itself, recognized a narrow exception to the general rule for the fact of a prior

conviction, as mandated by <u>Almendarez-Torres v. United States</u>, 523 U.S.

224 (1998).  <u>Apprendi</u>, 530 U.S. at 489. "*Other than the fact of a prior*

*conviction*, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." <u>Id.</u> (emphasis added).   The Supreme Court in

<u>Alleyne</u> expressly left untouched the relationship between <u>Apprendi</u> and

<u>Almendarez–Torres</u>.  <u>Alleyne</u>, 133 S. Ct. at 2160 n.1.  Therefore, Petitioner's

argument on this issue is without merit.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases,

the Court declines to issue a certificate of appealability as Petitioner has not

made a substantial showing of a denial of a constitutional right. 28 U.S.C. §

2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to

satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or

wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief

is denied on procedural grounds, a petitioner must establish both that the

correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate [Doc. 1], as amended and supplemented [Docs. 2, 3, 4, and 5], is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability. The Clerk is respectfully directed to close this civil case.

**IT IS SO ORDERED.**

Signed: June 16, 2015

Martin Reidinger
United States District Judge